FILED
2006 Jan-31 PM 03:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| LARRY HINDMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   6:04-cv-02310-JEO |
| | ) |
| FAYETTE COTTON MILLS, INC., | ) |
| and FRUIT OF THE LOOM, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter is before the court on the defendants' motion for summary judgment. (Doc. 11). Premised on the evidence and arguments of counsel, the court finds that the motion is due to be granted.

### BACKGROUND FACTS

The plaintiff began working for Fruit of the Loom, Inc., on March 20, 1970. (Hindman Dep. at p. 8).[1] He worked for Fruit of the Loom for over 33 years. (*Id*.).

As an employee of the defendant, the plaintiff was entitled to participate in the defendant's 2003 Management Incentive Plan ("MIP"). On April 11, 2003, John Holland, Chief Executive Officer of Fruit of the Loom, wrote the plaintiff a memorandum outlining the MIP and the plaintiff's participation level. (Ex. 2 at 011-015).[2] For the plaintiff to be eligible for a bonus under the MIP, the defendant must have achieved operating earnings of more than $203 million in 2003. (*Id*.). The MIP described eligibility for benefits upon cessation of employment as

---

[1] The plaintiff's deposition is located at document 13.

[2] Unless noted elsewhere, the exhibits are attached to the plaintiff's deposition and the numbers are the "Bates" numbers assigned by the party.

follows:

> The eligibility of an employee who is discharged for cause or resigns during 2003 will be automatically cancelled. In the event of termination of employment due to death, disability or retirement during the year, the employee or their estate will be eligible for a prorated share of any incentive earned under the Plan based upon the length of time the employee participated in the Plan.

(Ex. 2 at 012). The MIP outline states that "[t]he parameters outlined in this Plan apply to the year 2003 only. These Plan parameters will have no application to any incentive plans that may be developed in future years." (*Id*.). The Company did not meet the operating earnings goal; the operating earnings were $198.8 million, leaving the 2003 MIP participants ineligible for a bonus. (Ex. 3 at 016).

Several Fruit of the Loom plants were closed in the recent past, including the plant where the plaintiff was employed. (Hindman Dep. at pp. 13-16). The plaintiff was informed by Fruit of the Loom on July 28, 2003, that his job was being eliminated due to downsizing. (*Id*. at pp. 23-24). He was the Production Manager of Fayette Cotton Mill, Inc., a subsidiary of Fruit of the Loom, at the time of his termination. (*Id*. at p. 27). He was offered and accepted a severance agreement on August 1, 2003, entitling him to 37 weeks of severance pay and certain benefits. (Ex. 1 at 001). The severance agreement allowed the plaintiff to continue participation in the MIP. (*Id*. at 002).

On February 17, 2004, Fruit of the Loom announced a Supplemental Incentive Plan ("SIP") in a memorandum authored by Holland. (Ex. 4 at 017). The memorandum states that 2003 was a difficult year for Fruit of the Loom, which included price reductions that were necessary in order to meet competition. (*Id*.). The SIP further states that it was intended to provide compensation to employees based on the actual 2003 operating earnings and 2003 base

2

pay notwithstanding the failure to meet the targeted earnings figure of $203 million. The SIP stated:

> Final operating earnings were below the MIP minimum threshold to trigger any incentive payout under the MIP plan.
>
> **However**, considering the <u>extent of the substantial unanticipated</u> Price Reduction we had to make to meet competition and after much consideration, we developed a **supplemental incentive plan**, which you, as an active member of Key Management, will participate in (outlined in Exhibit I).
>
> This is being done to partially offset the severe effect of the price change, **and to reward the effort**, you as a key member of our Management Team, made to continue improving the Company in difficult times.

(*Id*. at 017-18) (all emphasis, both bold and underscore is original).

The earnings threshold for participation in SIP was lowered from $203 million to $173.6 million. (Ex. 4 at 019). The 2003 operating earnings reached $198.8 million, entitling all participating active employees to a bonus calculated at a percentage of their 2003 base pay. (*Id*. at 017-019). With operating earnings of $198.8 million, a bonus would have been computed at 97.8 percent for participating employees. (*Id*. at 019). Under the SIP, the plaintiff's "incentive percentage opportunity" would have been 15 percent, entitling him to receive a bonus of $15,577.19, if he were eligible. (Ex. 8).[3]

Fruit of the Loom refused to pay SIP benefits to the plaintiff for 2003, asserting that the plaintiff was ineligible due to the fact he was no longer employed with the company. (Ex. 9). It asserted that no bonus was earned under the 2003 MIP and that the plaintiff was not entitled to a bonus for 2003. (*Id*.).

---

[3]This exhibit is located with the plaintiff's brief. (Doc. 15). This figure is derived by multiplying the plaintiff's salary ($106,184.00) times 15% times 97.8% for a total of $15,577.19.

During the discovery process, the plaintiff received documents demonstrating that another employee of the defendant, Michael Vaughn,[4] whose employment ended on December 31, 2003, recovered benefits in 2004 under the SIP. (Tony Pelaski Aff.).[5]

## STANDARD OF REVIEW

The parties agree for purposes of this motion that the applicable standard of review is the *de novo* standard. The court sees no reason to disagree. Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided by trial. Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex,* 477 U.S. at 322-23; *see* FED. R. CIV. P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e)

---

[4]Vaughn's name is also spelled "Vaughan" in the corporate records of the defendant company.

[5]Pelaski's affidavit is located at document 13.

"requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324.  The nonmoving party need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings.  *Id*.

After a motion has been responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).  The substantive law will identify which facts are material and which are irrelevant.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  "[T]he judges's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

## DISCUSSION

In his complaint, the plaintiff alleges breach of contract and fraud claims against the defendants.  (Doc. 1).  The defendants assert that these claims are due to be dismissed.  The plaintiff does not disagree.  In *Franklin v. ZHG of Gadsden, Inc*., 127 F.3d 1024, 1028 (11th Cir. 1997), the court stated:

> "ERISA 'completely preempt[s]' the area of employee benefit plans and thus converts state law claims into federal claims when the state law claim is preempted by ERISA and also falls within the scope of the civil enforcement section of ERISA, Section 502(a), 29 U.S.C. § 1132(a)." *Brown v. Connecticut General Life Ins. Co*., 934 F.2d 1193, 1196 (11th Cir. 1991) (alteration in original) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64, 107 S. Ct. 1542, 1546-47, 95 L. Ed. 2d 55 (1987)).

Examining the record and the issues presented, the court finds that the state law claims are due to

be dismissed and the complaint converted into an ERISA claim.  *See* 29 U.S.C. § 1144(a) (ERISA "supercede[s] any and all State laws insofar as they now or may now or hereafter relate to any [ERISA plan]."); *Orozco v. United Air Lines, Inc.*, 887 F.2d 949, 950-52 (9th Cir. 1989) (Severance plans are generally considered ERISA plans.).

The defendants next argue that they are due summary judgment on the plaintiff's ERISA claims because the severance agreement does not entitle the plaintiff to participate in the SIP which was created six months after his termination.  (Def. Br. at p. 6).[6]  In contravention of the defendant's argument, the plaintiff argues that any ambiguities in the severance agreement should be construed most favorably for him and that the SIP is a "de facto revision of the 2003 MIP in which [the plaintiff] was entitled to participate."  (Def. Br. at pp. 15-23).  In support of his argument, he asserts that the defendants also should be estopped from denying him benefits because Vaughn received a bonus under the SIP.  (*Id*. at pp. 19-20).  In support of this argument, the plaintiff cites *Hollingshead v. Burford Equipment Co*., 747 F. Supp. 1421 (M.D. Ala. 1990).

The court has closely examined the severance agreement and finds that the language is clear and unambiguous.  It specifically states that the plaintiff is a participant in the 2003 MIP and his "entitlement to any 2003 MIP bonus will be based solely on the terms of the 2003 MIP." (Ex. 1 at 002).  Under the express terms of the MIP, the defendant had to achieve its operating earnings goal of $203 million, which the Company did not do.  The plaintiff therefore is not entitled to benefits under the MIP as a part of the severance agreement.[7]

---

[6] The defendants' brief is located at document 12.

[7] The plaintiff acknowledges this in his brief.  (Pl. Brief (doc. 15 at p. 7) ("The failure to meet the projected earnings target, even by a small margin, would have meant that management officials throughout the company would not receive incentive bonuses for 2003.").

The plaintiff argues that his entitlement to benefits is pursuant to the SIP because it is a "*de facto* revision" of the MIP.  The defendant recharacterizes the plaintiff's argument stating that "the [p]laintiff is arguing that the defendants should be *estopped* from enforcing the terms of the supplemental plan, because in practice, the defendants have construed the plan differently than its terms."  (Def. Reply at p. 3).[8]  The court finds that regardless of how the issue is framed, the plaintiff is not entitled to relief.

The SIP was implemented six months after the plaintiff's termination.  It does not come within the parameters of the severance agreement.  To the extent that the plaintiff argues that the SIP is merely a revision that somehow entitles him to benefits, the court disagrees.  As already discussed, the severance plan is clear, it is based on the MIP, not the SIP.

To the extent that the plaintiff asserts that the payment of benefits to Vaughn under the SIP precludes the granting of summary judgment, the court disagrees for a number of reasons.  First, the plaintiff and Vaughn were not similarly situated.  Vaughn worked all of 2003 and his retirement was effective on December 31, 2003.  Vaughn was an active employee for the entire year.  In contrast, the plaintiff was terminated August 1, 2003, being an active employee only seven months in 2003.

Second, *Hollingshead* is clearly distinguishable from the present situation.  In *Hollingshead*, the plaintiffs challenged, among other things, the defendant company's determination of the "normal retirement age under the service retirement plan" at issue.  *Id*., 747 F. Supp. at 1431.  One of the defendant's corporate resolutions stated that the retirement age was 62, while another resolution created an optional early retirement age at 55 premised upon unusual

---

[8]The defendants' reply brief is located at document 16.

circumstances and approval of the company's board of directors. *Id*. at 1432. The evidence also demonstrated that benefits were not denied to anyone who requested the early retirement. *Id*. Still further, the evidence showed that corporate documents supported the conclusion that employees could retire at 55 with sufficient years of service. *Id*. at 1433. The court concluded that the plaintiffs' reasoning that they could retire at 55 was persuasive in light of the defendant's actual practices and that the plan could not be modified as to them without violating the ERISA laws. *Id*.

In the present situation, the plaintiff was never told he would receive a bonus for his services during 2003. (Hindman Dep. at pp. 62-63). The severance agreement did not state that he would receive any benefits under any supplemental plan. To the contrary, it specifically stated that any bonus would "be based solely on the terms of the 2003 MIP. . . ." (Ex. 1 at 002). The defendant's payment of a bonus to Vaughn under the SIP for his full year of service is not the equivalent of the *Hollingshead* defendant's payment of benefits to all who applied for retirement. To the contrary, in this case, the evidence shows that no one who worked less than the entire year received a bonus. In fact, the list of "2003 MSIP Plan" employees shows that no employee who worked less than the entire year received a bonus for 2003.[9] The payment to Vaughn cannot be deemed a *de facto* revision or amendment to the MIP which entitles the plaintiff to relief under the present circumstances.

In reaching the foregoing conclusions, the court has not ignored its responsibility to construe the severance agreement, the MIP, and the SIP appropriately when the employer is the

---

[9]Those not receiving bonuses were the plaintiff (08/01/03), Ronald B. Mardis (08/11/03), Barbara E. Noyes (10/23/03), Douglas Schneider (10/03/03), Leonard J. Silverman (09/09/03), David Springob (10/03), Eric Thomas (12/19/03), Kalen W. Watkins (09/22/03), and Claude Granger (08/08/03). (Ex. 7).

drafting party. *See Lee v. Blue Cross/Blue Shield of Alabama*, 10 F.3d 1547, 15551 (11th Cir. 1994) ("Having determined that the plan is ambiguous, we hold that application of the rule of *contra proferentem* is appropriate in resolving ambiguities in insurance contracts regulated by ERISA. This rule has been widely adopted among our sister circuits."); *HCA Health Services of Georgia, Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 994 n.2 (11th Cir. 2001) ("When a plan is ambiguous, the principle of *contra proferentem* requires that ambiguities be construed against the drafter of a document; as such, the claimant's interpretation is viewed as correct."). However, the court does not find the documents, individually or collectively, to be sufficiently ambiguous to warrant any contrary result.

Lastly, to the extent the plaintiff argues that the court should take equity into account so as "to complement, not contravene, the express language" of a plan, the court finds that a contrary conclusion is not justified by the facts. *Wassau Benefits v. Progressive Ins. Co.*, 270 F. Supp. 2d 980, 989 (S.D. Ohio 2003). The plaintiff was offered and accepted a severance agreement that included 37 weeks of continued salary and other benefits. (Ex. 1). The only employee awarded a SIP bonus was Vaughn who worked the entire year. The other employees who were not active all year were not paid.

## CONCLUSION

Premised on the foregoing, the court finds that the defendants are entitled to summary judgment on the plaintiff's claims. An appropriate order will be entered.

**DONE**, this the 31st day of January, 2006.

_____
**JOHN E. OTT**
United States Magistrate Judge